IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| NATIONAL SURETY CORPORATION and FIREMAN'S FUND INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>PAUL SIEWERT and SIEWERT RANCH AND FARM, LLC,<br><br>Defendants. | CV 22-20-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

National Surety Corporation ("National Surety") and Fireman's Fund Insurance Company ("Fireman's Fund") (collectively "Plaintiffs") filed this lawsuit in March 2022 against Defendants Paul Siewert ("Siewert") and Siewert Ranch and Farm, LLC ("SRF") for fraud and related claims. (Doc. 1.) Plaintiffs seek to recoup $193,800.00, plus interest and costs, paid on an insurance claim made by Siewert and SRF.

Initially, SRF moved to dismiss the Complaint pursuant to Federal Rule 12(b)(6) on grounds that it was dissolved a few months before the Complaint was filed, and therefore, was not a legal entity that could be sued. The undersigned determined SRF's motion was baseless and submitted a Findings and Recommendation to Judge Watters recommending that SRF's motion be denied.

1

(Doc. 10.) Judge Watters adopted the Findings and Recommendation, and denied SRF's motion to dismiss. (Doc. 11.)

SRF did not thereafter file an answer, and its default was subsequently entered on March 17, 2023. (Doc. 13.) Siewert's default was also entered on April 17, 2023.[1] (Doc. 14.)

On April 25, 2024, Plaintiffs filed a motion requesting the Court enter default judgment against Siewert and SRF in the amount of $193,800.00, plus interest and costs. (Doc. 15.) The motion has not been opposed.

The Court initially scheduled a Default Judgment hearing for July 10, 2024.

---

[1] The Court notes that Plaintiffs filed their Motion for Entry of Default of Siewert at 11:35 a.m. on April 6, 2022. (Doc. 6.) Later that same day, at approximately 1:50 p.m., Siewert filed an Answer. (Doc. 7.) The Clerk entered Siewert's default on April 17, 2023. (Doc. 14.) The Court recognizes there was a substantial delay between Plaintiff's motion for entry of default, and the Clerk's actual entry of default. Nevertheless, the entry of default was proper. Federal Rule Civil Procedure 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Because there was no answer on file at the time the motion for entry of default was filed, the Clerk was required to enter the default. *See e.g. McManus v. Am. States Ins. Co.*, 201 F.R.D. 493, 499 (C.D. Cal. 2000) (holding that where request for entry of default reached the courthouse an hour and a half before the answer, entry of default was proper); *Light for Life v. Our Firm Found. For Koreans, Inc.*, 2013 WL 1296391, *1 (M.D. Ga. March 26, 2013) ("[I]f a party files an answer after the request for entry of default but before the entry of default, as is the case here, the clerk still must nevertheless enter default"). Once default has been entered, the appropriate remedy is for the defaulting party to file a motion to set aside the entry of default under Rule 55(c). To date, Siewert has not taken any action to set aside the entry of default.

(Doc. 16.) The hearing was subsequently continued multiple times, two of the continuances were requested by Siewert, who had requested additional time to retain counsel. (Docs. 18, 23, 27, 33.) Despite affording Siewert over three months to hire an attorney, Siewert failed to retain counsel.

The Court held the Default Judgment hearing on November 20, 2024. (Doc. 34.) Neither Siewert nor SRF appeared at the hearing. The Court heard testimony from Naya Fithian, Senior Claims Adjuster for National Surety. Following the hearing, Plaintiffs filed Proposed Findings of Fact and Conclusions of Law, summarizing their legal claims and elements of damages. (Doc. 36.)

For the following reasons, the Court recommends that default judgment be entered in favor of Plaintiffs and against Siewert and SRF, and that damages be awarded in the amount of $193,800.00, plus interest and costs as set forth below.

I.   FACTUAL BACKGROUND

After entry of default, the factual allegations of the complaint are accepted as true, except those relating to the amount of damages. *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir. 1977). Consequently, the following facts are taken from the Complaint. (Doc. 1.)

On December 30, 2019, National Surety issued insurance policy number FRM06711428, which was a renewal of policy number FRM06702886, to Siewert

Ranch, Walter Siewert, and Steven Siewert with a policy period of March 2, 2020 to March 2, 2021 (the "Policy"). (Doc. 1 at ¶ 8.)

The address of the named insured under Policy number FRM06711428 is 3200 Indian Creek Road, Huntley, Montana 59037-9326. (*Id.* at ¶ 9.) Neither Paul Siewert nor SRF are named insureds under the Policy. (*Id.* at ¶¶ 10-11.)

The Policy covered 3 locations at Siewert Ranch. (*Id.* at ¶ 14.) Location 3 had a shop building valued at $193,800.00. (*Id.* at ¶ 16.)

On February 27, 2020, Adrienne Pierce of HUB, broker for Siewert Ranch, sent a request to National Surety to have the Policy cancelled. (*Id.* at ¶ 17.) Siewert Ranch obtained new coverage for the ranch with a start date of March 2, 2020 from Liberty Mutual Insurance Company. (*Id.* at ¶ 18.) The Policy was cancelled retroactively to inception (March 2, 2020) upon the request of Siewert Ranch. (*Id.* at ¶ 19.)

Paul Siewert made, or caused to be made, a claim for a fire loss to National Surety, which was first reported to National Surety on March 11, 2020. (*Id.* at ¶ 22.) He claimed that the fire destroyed a shop at Location 3. (*Id.* at ¶ 23.)

Paul Siewert lives at 204 Hogan Road, Huntley Montana. (*Id.* at ¶ 27.) He directed that payment be sent to 204 Hogan Road, Huntley, Montana, not the Siewert Ranch address of 3200 Indian Creek Road, Huntley, Montana. (*Id.* at ¶ 28.)

Check number 33808779 from National Surety or Fireman's Fund was issued on March 20, 2020, payable to "Siewert Ranch" for $193,800.00 (the "Check"). (*Id.* at ¶ 29.) The Check was deposited on March 30, 2020 at First Security Bank into account 38910165. (*Id.* at ¶ 30; Doc. 1-5.)

At the default judgment hearing, Naya Fithian testified she communicated only with Paul Siewert in adjusting the loss. (Doc. 21-4.) Naya Fithian first learned of the Policy cancellation on April 24, 2020, and she requested an immediate stop payment. (Doc. 21-8.) On April 24, 2020, Naya Fithian also advised Paul Siewert that the Policy was cancelled with an effective date of March 2, 2020, which predates the date of loss. (Doc. 21-7.) Defendants Paul Siewert and SRF failed to return the $193,800.00 deposited by them. (Doc. 1 at ¶ 35.)

## II.   DISCUSSION

### A.   Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy meets the jurisdictional threshold. National Surety is an Illinois corporation with its principal place of business in Chicago, Illinois. National Surety is a wholly owned

subsidiary of Fireman's Fund. Fireman's Fund is an Illinois corporation with its principal place of business in Chicago, Illinois. (Doc. 1 at ¶¶ 1-2.) Siewert is a citizen of the State of Montana and resides in Huntley, Montana. (*Id.* at ¶ 3.) SRF is a Montana limited liability company formed on March 24, 2020 with no principal address. Its mailing address is listed as 204 Hogan Road, Huntley, Montana. (*Id.* at ¶ 4.) Paul Siewert is the sole manager/member of SRF. (Doc. 21-11.) The amount in controversy exceeds $75,000. (Doc. 1 at 10.)

Siewert and SRF are also subject to the Court's personal jurisdiction because they are "persons found within the state of Montana." Mont. R. Civ. P. 4(b)(1). Additionally, the claims against Siewert and SRF arise from the commission of an act resulting in accrual within Montana of a tort action, and SRF previously appeared in this action voluntarily. Mont. R. Civ. P. 4(b)(1)(B); (b)(2)(B). (b)(2)(B).

### B. Entry of Default Judgment

The entry of default judgment against a party is governed by Fed. R. Civ. P. 55(b). The decision to grant default judgment under Fed. R. Civ. P. 55(b)(2) is left to the court's discretion. *Albade v. Albade,* 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether default judgment is appropriate, the following factors may be considered: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of

money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The first *Eitel* factor weighs in favor of default. Siewert and SRF were personally served with the Complaint and failed to timely answer the Complaint or move to set aside the Clerk's entry of default. If default judgment is not entered, Plaintiffs "will likely be without other recourse or recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Therefore, prejudice to Plaintiffs is clear.

The second and third factors are also met. Plaintiffs allege facts which state a plausible claim for relief, as required by Fed. R. Civ. P. 8(a). Plaintiffs have sufficiently alleged a claim for unjust enrichment against Siewert and SRF. Under Montana law, the essential elements of unjust enrichment are: "(1) a benefit conferred on one party by another; (2) the other's appreciation or knowledge of the benefit; and (3) the other's acceptance or retention of the benefit under circumstances that would render it inequitable for the other to retain the benefit without compensating the first party for the value of the benefit." *Associated Mgmt. Servs., Inc. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018). Unjust enrichment "does not necessarily require proof of a wrongful act or conduct . . . [it] merely

7

requires proof that a party unjustly gained something of value, regardless of wrongful conduct." *Id.* Plaintiffs have alleged that a benefit of $193,800.00 was conferred on Siewert and SRF. (Doc. 1 at ¶ 72.) Siewert and SRF had knowledge of the benefit because Siewert deposited the $193,800.00 Check into SRF's bank account. (*Id.* at ¶ 73.) Finally, Plaintiffs argue the acceptance and retention of the $193,800.00 is inequitable because Siewert and SRF were not entitled to receive the funds under the Policy, and they knew the funds were paid in error or have since learned the funds were paid in error. (*Id.* at ¶¶ 74-75.)

Plaintiffs' claim for conversion also has merit. Under Montana law, "a claim for conversion must satisfy the following elements: ownership of property, a right of possession, unauthorized dominion over that property by another, and damages that result." *Eatinger v. Johnson*, 887 P.2d 231, 234 (Mont. 1994). Plaintiffs alleged they owned the $193,800.00 and had the right to possess the funds. (Doc. 1 at ¶¶ 78-79.) Siewert and SRF exercised unauthorized control over the $193,800.00, and as a result Plaintiffs were damaged. (*Id.* at ¶¶ 80-81.)

In the Complaint, Plaintiffs also allege that Siewert and SRF committed other intentional torts, including actual fraud, constructive fraud, deceit, and civil conspiracy. (*Id.* at ¶¶ 36-70.) But the damages recoverable under those torts would be duplicative of the damages recoverable under the claims discussed

above, and thus, the additional claims do not impact the analysis of the *Eitel* factors.

Under the fourth factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; see *Eitel*, 782 F.2d at 1471-72.  Here, although the sum of money at stake is substantial, it is specifically tailored to the damages caused by Siewert and SRF's conduct.  Plaintiffs seek $193,800.00 in damages as a result of Siewert and SRF's acceptance and retention of the funds paid after the Policy was cancelled.  In addition, Plaintiffs seek prejudgment interest, post-judgment interest, and costs.  (Doc. 36-1 at 5.)  As discussed below, the Court concludes that the evidence generally supports an award in the amount requested by Plaintiffs.

As to the fifth factor, following entry of default by the Clerk of the Court, the factual allegations of the Complaint related to liability were taken as true.  *Geddes,* 559 F.2d at 560.  Accordingly, the possibility of a genuine dispute concerning material facts no longer exists.

Regarding the sixth factor, there is no indication Siewert or SRF's default is due to excusable neglect.  Neither Defendant have made any attempt to set aside the defaults since they were entered on March 17, 2023 and April 17, 2023.  (Docs. 13, 14.)

Finally, the seventh factor does not weigh against the entry of default judgment. Although cases should be decided on the merits whenever possible, "this preference, standing alone, is not dispositive." *PepsiCo,* 238 F. Supp. 2d at 1177. Rule 55(b) allows the Court to enter a default judgment if a defendant fails to defend against an action. *Id.* Here, Siewert and SRF's failure to participate in this litigation makes a decision on the merits impossible. The federal rules provide for the entry of default judgment in these circumstances.

Therefore, after consideration of the *Eitel* factors, the Court finds that the entry of default judgment is appropriate.

### C. Damages

To recover damages after securing a default, the plaintiff must provide evidence of its damages through admissible evidence. *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011).

#### a. Actual Damages

Here, Plaintiffs presented the testimony of Naya Fithian at the Default Judgment Hearing to establish that the amount of their damages are $193,800.00. The Court accepts Ms. Fithian's testimony, and finds Plaintiffs have sustained $193,800.00 in actual damages.

/ / /

/ / /

b. Prejudgment and Post-Judgment Interest

Plaintiffs seek an award of prejudgment interest from the date the Check was deposited through the date of judgment. Plaintiffs also request post-judgment interest. In diversity cases, "the court looks to state law to determine the rate of prejudgment interest, while federal law determines the rate of post judgment interest." *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1055 (9th Cir. 2013).

Prejudgment interest is governed by Mont. Code Ann. § 27-1-211, which provides:

> Each person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover that is vested in the person upon a particular day is entitled also to recover interest on the damages from that day except during the time that the debtor is prevented by law or by the act of the creditor from paying the debt.

Mont. Code Ann. § 27-1-211.[2]

Entitlement to prejudgment interest under Montana law has three prerequisites: (1) an underlying monetary obligation; (2) the amount of recovery must be capable of being made certain; and (3) the right to recover must vest on a

---

[2] Prejudgment interest under Montana law is calculated pursuant to Mont. Code Ann. § 25-9-205, which provides interest is payable "at a rate equal to the rate for bank prime loans published by the federal reserve system in its statistical release H.15 Selected Interest Rates or in any publication that may supersede it on the day judgment is entered, plus 3%. The interest may not be compounded."

particular day. *Edwards v. Cascade Cty.*, 212 P.3d 289, 296 (Mont. 2009). Here, all three prerequisites are met. First, Siewert and SRF were not entitled to receive the $193,800.00 Check under the Policy. Second, the amount of the Check is a fixed sum. Finally, the right to recover the funds vested as of March 30, 2020, because that is the date Siewert and SRF deposited the Check they were not entitled to receive. Mont. Code Ann. § 27-1-320 (measure of damages for conversion includes the value of the property "at the time of its conversion with interest from that time"). Accordingly, the Court finds Plaintiffs are entitled to prejudgment interest.

Under federal law, post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).[3] Plaintiffs are, therefore, also entitled to post-judgment interest calculated from the date of the entry of judgment until the judgment is paid in full.

    c.    <u>Costs</u>

Finally, Plaintiffs propose the Court award $1,295.66 in costs. (Doc. 36-1 at 5.) While the Court may award costs to the prevailing party, Fed. R. Civ. P. 54(d)(1), it may only award costs authorized by statute. *Crawford Fitting Co. v. J.*

---

[3] 28 U.S.C. § 1961(a) provides that post-Judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

*T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).  The general provision for recovery of costs lists six categories of recoverable costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The Court finds Plaintiffs are entitled to those costs that are allowable under 28 U.S.C. § 1920.  Plaintiffs have not, however, submitted a declaration or supporting documentation such as invoices, receipts, or billing statements to support the request for costs.  As such, the Court does not presently have a sufficient basis to award specific costs.

Accordingly, if Plaintiffs wish to recover costs, they shall follow the procedure set forth in L.R. 54.1(a), which provides:

> Within 14 days after the entry of a judgment allowing costs, the prevailing party may serve and file an application for the taxation of costs.  The application must be made on Form AO-133, Bill of Costs, available on the court's website and shall be limited to the costs permitted by 28 U.S.C. § 1920.  Sufficient documentation showing the amount of costs (including but not limited to, copies of invoices, receipts, orders, vouchers billing statements, etc.) is required.  Failure to attach sufficient documentation to support a claimed cost is grounds for disallowance of that particular item.

III.   **CONCLUSION**

Based on the foregoing, **IT IS RECOMMENDED** that default judgment be entered in favor of Plaintiffs and against Siewert and SRF as follows:

1. Damages be awarded to Plaintiffs in the amount of $193,800.00.

2. Prejudgment interest from March 30, 2020, to the date the judgment is entered, at the Montana rate pursuant to Mont. Code Ann. § 25-9-205(1).

3. Post-judgment interest from the date the judgment is entered until the judgment is satisfied, at the federal rate pursuant to 28 U.S.C. § 1961.

4. Costs upon proper application to the Clerk pursuant to Local Rule 54.1.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 6th day of December, 2024.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge